**In re Sandra and Heribut GRIESENBUCK, Debtors.**

**Bankruptcy No. 085–50092–20.**

United States Bankruptcy Court, E.D. New York, at Westbury.

Nov. 21, 1985.

---

**1.** *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 374–75 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 89 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787.

Marianne De Rosa, Mineola, N.Y., trustee.

Norman Mendelson, Carle Place, N.Y., for debtors.

Philip Irwin Aaron, P.C., Jericho, N.Y., for creditor; Allan B. Mendelsohn, of counsel.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

This matter came to be heard on the motion of Richard Gill Co. for an order imposing sanctions on the debtor, Sandra Griesenbuck, and her attorney, Norman Mendelson, Esq., as punishment for making false oaths on the petition and schedules for this bankruptcy. The court finds that false oaths were made by both Ms. Griesenbuck and her attorney. Norman Mendelson, Esq. is ordered to pay forthwith to the Richard Gill Company the sum of $2,250.00 as sanction for his misconduct.

## FACTS

In late 1984, a judgment of foreclosure was obtained by the Richard Gill Company against the Griesenbucks because they were behind on their mortgage payments. The property was to be sold by the Sheriff of Suffolk County on February 8, 1985. Ms. Griesenbuck, who was responsible for the family finances, deceived her husband and told him that the foreclosure sale was a computer error. On February 7, 1985, the day before the sheriff's sale, Ms. Griesenbuck consulted Norman Mendelson and told him that she and her husband desired to file a bankruptcy petition to reorganize their finances so they would not lose their home. Mr. Mendelson explained the options to Ms. Griesenbuck under chapters 7, 11 and 13 of the United States Bankruptcy Code. Ms. Griesenbuck chose to file for joint bankruptcy with her husband under chapter 13. Mr. Mendelson immediately prepared a bankruptcy petition for the Griesenbucks, listing one creditor: the Richard Gill Company. Mr. Mendelson witnessed Mrs. Griesenbuck sign the petition, and instructed her to go to her husband's place of employment to obtain his signature.

Ms. Griesenbuck testified that she never contacted her husband. Instead, she sat for twenty minutes in her car, and then returned to Mr. Mendelson's office and stated that she could not find her husband, but, Mr. Griesenbuck had asked her to sign the petition for him. Ms. Griesenbuck then signed the name of Heribut Griesenbuck on the petition followed by her initials. Ms. Griesenbuck stated that Mr. Mendelson took the petition and told her that Mr. Griesenbuck would have to appear at her next appointment.

Mr. Mendelson testified that his memory is unclear on all the circumstances of Mr. Griesenbuck's signature on the petition. The record reflects that Mr. Mendelson collected a fee of $750 at the first appointment.

Ms. Griesenbuck's next appointment with Mr. Mendelson was on February 20, 1985, for the completion of bankruptcy schedules. Again, Ms. Griesenbuck appeared without her husband and completed the schedules with Mr. Mendelson. Again, Mr. Mendelson instructed her to obtain her husband's signature. Again, Ms. Griesenbuck left Mr. Mendelson's office and then signed her husband's name without his permission, but this time she did not initial the signature. When Ms. Griesenbuck re-

turned to Mr. Mendelson's office, she left the schedules with a secretary.

The schedules filed with the court include a document signed by Mr. Mendelson in which he declares that (1) he was retained by Mr. and Mrs. Griesenbuck to represent them in a bankruptcy case, and (2) that both Mr. and Mrs. Griesenbuck agreed to pay Mr. Mendelson $750.00.

Neither Ms. Griesenbuck nor her husband appeared for scheduled meetings with the creditor in this case; and no post-petition mortgage payments were made to the creditor. Accordingly, on April 19, 1985, Mr. Mendelson mailed a registered letter to Mr. Griesenbuck informing him of the status of the case. Upon receiving the letter, Mr. Griesenbuck first learned of his wife's deception.

Since that time Mr. Fred Hagerman, Ms. Griesenbuck's father, has taken an interest in the case because he lives with the Griesenbucks, and he recently made $23,000.00 worth of improvements to the property. Mr. Griesenbuck and Mr. Hagerman agreed to pay the outstanding balance of the mortgage to the Richard Gill Company, or to make payments under the proposed bankruptcy plan. On May 1, 1985, the court dismissed the bankruptcy, and on June 26, 1985, the Richard Gill Company agreed to reinstate the mortgage upon payment of arrears. Mr. Griesenbuck testified that he has recently assumed responsibility for the family finances.

## DISCUSSION

Bankruptcy Rule 9011 states that:

The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

■ In this case, Ms. Griesenbuck violated Bankruptcy Rule 9011 when she signed her husband's name on the following forms: Chapter 13 Statement, Chapter 13 Plan, and Disclosure of Compensation Statement Pursuant to Rule 2016(b). Ms. Griesenbuck also violated Bankruptcy Rule 9011 by representing that she signed the Bankruptcy Petition and Acknowledgment of Notice to Debtors on behalf of her husband.

■ As to Mr. Mendelson, he violated Rule 9011 when he signed affirmations that he explained to Mr. Griesenbuck his options under the Bankruptcy Code; when he signed his statement of Disclosure of Compensation stating that Mr. Griesenbuck had retained him as counsel and agreed to pay $750.00 attorney fees; and when he verified the petition.

The court finds that due to the delay and inconvenience suffered by the Richard Gill Company, as well as the importance of maintaining the integrity of the bankruptcy court, sanctions are appropriate. As to Ms. Griesenbuck, she brought great hardship upon her family by filing this bankruptcy, and monetary sanctions would only hurt her family more. Further, the damage caused by her conduct was compounded by a factor beyond Ms. Griesenbuck's control; the bad judgment of her attorney. Thus, the court finds that Ms. Griesenbuck has suffered enough by having paid $750.00 to Mr. Mendelson, and court-ordered sanctions would be superfluous.

As to Mr. Mendelson, the court commends his integrity for assuming responsibility for this sham of a bankruptcy. At the hearing of this motion, Mr. Mendelson did not equivocate:

Your Honor, the situation involving Mr. Griesenbuck's not signing the petition was brought forth by myself, Your Honor, as an officer of the court ...

Accordingly, the court finds that Mr. Mendelson must compensate for the problems

he created. The Richard Gill Company was forced to review debtor's bankruptcy documents, review its loan file, hire an attorney, file many documents in this court, suffer the humiliation of unnecessary litigation, and finally, press for sanctions against debtor and her attorney. Therefore, the court awards the Richard Gill Company $2,250.00, to be paid by Norman Mendelson, Esq. forthwith.

SO ORDERED.